# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1391

_____

Syngenta Seeds, Inc., A Delaware corporation

*Plaintiff - Appellant*

v.

Bunge North America, Inc., a New York corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: December 18, 2013
Filed: August 8, 2014

_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Syngenta Seeds, Inc. (Syngenta) sued Bunge North America, Inc. (Bunge), alleging Bunge (1) breached an obligation under the United States Warehouse Act (USWA), 7 U.S.C. §§ 241-256; (2) breached a duty to third-party beneficiaries of a licensing agreement between Bunge and the federal government; and (3) engaged in false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125. The district court

dismissed Syngenta's USWA and third-party beneficiary claims on the pleadings, and granted Bunge summary judgment on the Lanham Act claim. Syngenta appeals. We affirm the dismissal of the USWA and third-party beneficiary claims and remand the Lanham Act claim for further proceedings.

I

Syngenta is a biotechnology company. One of Syngenta's products is a strain of genetically-modified corn seed it markets under the name Agrisure Viptera (Viptera). Syngenta began selling Viptera in the fall of 2010 for planting in the spring of 2011. Before it began selling Viptera, Syngenta obtained regulatory approval for Viptera's sale in the United States. Syngenta also obtained regulatory approval from numerous foreign countries, allowing for corn grown from Viptera seed to be imported into those countries. Syngenta had not, however, obtained such approval from China. At all times pertinent to this case, China maintained a zero-tolerance policy regarding imports of corn grown from seed with genetically-modified traits China had not approved. Pursuant to the policy, Chinese officials could prohibit an entire shipment of corn from entering the Chinese market if the shipment contained traces of corn with an unapproved genetically-modified trait.

Bunge is an agricultural product storage and transport company. It purchases agricultural products from domestic farmers, stores the products in local elevators, processes them at regional facilities, and transfers the products to purchasers in domestic and foreign markets. Bunge has purchase contracts with a number of farmers who purchased Viptera seed from Syngenta. The purchase contracts contain provisions authorizing Bunge to refuse to accept agricultural products containing genetic modifications for which import approval has not been obtained in foreign export markets.

Bunge is also a federally licensed warehouse operator. To become federally licensed, Bunge entered into a licensing agreement (License Agreement) with the federal government. Bunge's obligations under the License Agreement and USWA are secured by a bond, as required by the USWA. See 7 U.S.C. § 245(a).

Among the countries to which Bunge ships corn is China. In the summer of 2011, due to significant increases in the amount of corn being imported into China, Bunge started treating China as a major export market for domestically-grown corn. Because of China's zero-tolerance policy regarding unapproved genetically modified traits, such as the one in Viptera, in July 2011 Bunge began refusing to accept corn grown from Viptera seed. To notify producers, Bunge placed signs in its regional facilities and on its website which read:

> Please note that Bunge currently **is unable to accept** delivery of corn/soybeans produced from the following seed products for the 2011/2012 growing season:
>
> **Agrisure® Viptera™ - MIR162 (Syngenta)**
> **Plenish™ soybeans (DuPont/Pioneer)**
>
> These seed products have not received necessary international approval from major export destinations for the U.S.
>
> Bunge facilities are integrated into the export market, which is why the terms of Bunge's purchase contract states that Bunge will not accept grains and oil seeds containing transgenic events not approved for U.S. export markets.
>
> Bunge will accept a listed product once the seeds receive approval from major export markets.

Bunge refused to accept corn grown from Viptera seed throughout the 2011-2012 growing season. Syngenta alleges the refusal resulted in some farmers who had

purchase contracts with Bunge and who had planted Viptera corn seed incurring additional expenses due to having to transport their harvested crops to non-Bunge warehouses, obtain non-Viptera corn to fulfill their contracts with Bunge, or buy out their contracts at a loss. Syngenta alleges many of those farmers expressed dissatisfaction with Syngenta and, as a result, Syngenta lost profits, market share, and goodwill in the fall of 2011 and in subsequent seasons.

Syngenta filed suit in district court. It alleged, in addition to claims not at issue in this appeal, claims (1) under the USWA and (2) as a third-party beneficiary of the License Agreement, that Bunge had breached USWA and contractual obligations to treat depositors of agricultural products fairly; and (3) under the Lanham Act, that Bunge had engaged in false advertising. On Bunge's motion, the district court dismissed Syngenta's USWA and third-party beneficiary claims on the pleadings, concluding neither allowed for the causes of action Syngenta had been pleading. The district court also granted Bunge summary judgment on Syngenta's Lanham Act claim, concluding Syngenta had failed to introduce sufficient evidence regarding whether Bunge's signs constituted commercial speech. Syngenta voluntarily dismissed its remaining claims to pursue this appeal.

II

On appeal, Syngenta argues the district court erred by dismissing its claims under the USWA and as a third-party beneficiary to the License Agreement.

A.    USWA Claim

Syngenta bases its USWA claim on Bunge's decision not to accept corn grown from Viptera seed because Viptera had not been approved for import into the Chinese market. Syngenta argues this decision violated Bunge's bonded obligation under 7 U.S.C. § 247(a) to treat depositors of agricultural products fairly and Syngenta, as

-4-

an entity which sells seed to Bunge's depositors, was harmed as a result. The district court dismissed Syngenta's USWA claim on the pleadings, concluding the USWA did not authorize the cause of action Syngenta had pled.

On appeal, Syngenta offers two arguments the USWA authorizes it to sue a warehouse operator for an alleged breach of a duty to treat depositors fairly. Syngenta first contends the private cause of action expressly authorized by 7 U.S.C. § 245(d) for violations of the USWA allows it to sue Bunge for breach of a warehouse operator's fair treatment obligation under 7 U.S.C. § 247(a). In the alternative, Syngenta contends the text of 7 U.S.C. § 247(a) itself indicates Congress intended to imply a private cause of action for breach of the fair treatment obligation.

1. Express cause of action in 7 U.S.C. §§ 245(d), 247(a).

In pertinent part, 7 U.S.C. § 245(d) sets forth:

> Any person injured by the breach of any obligation arising under this chapter for which a bond or other financial assurance has been obtained as required by this section may sue with respect to the bond or other financial assurance in a district court of the United States to recover the damages that the person sustained as a result of the breach.

As a federally licensed warehouse operator, a status which required Bunge to submit a bond to secure its obligations, Bunge has an obligation to treat depositors of agricultural products in a fair and reasonable manner, provided certain conditions are met. See id. § 247(a). The dispute here is whether Syngenta can sue Bunge under 7 U.S.C. § 245(d) for damages related to its lost market share, profits, and goodwill, allegedly resulting from a breach of a warehouse operator's fair treatment obligation under 7 U.S.C. § 247(a).

Syngenta argues it qualifies as a "person" for the purposes of 7 U.S.C. § 245(d), which it contends allows it to sue Bunge. Assuming without deciding Syngenta qualifies as a "person" for the purposes of 7 U.S.C. § 245(d), we conclude a different provision of the text precludes Syngenta's USWA claim against Bunge. In pertinent part, 7 U.S.C. § 245(d) authorizes persons injured by a breach of a warehouse operator's USWA bonded obligations to sue "*with respect to the bond* or other financial assurance[.]" (Emphasis added).

Congress added the "with respect to the bond" provision to the USWA in 2000. The previous version of 7 U.S.C. § 245(d) authorized persons injured by breaches of a warehouse operator's bonded obligations to sue in their own name "on the bond." 7 U.S.C. § 249 (amended 2000). In 2000, Congress amended the USWA, moving the section authorizing suits for breaches of a warehouse operator's bonded obligations to 7 U.S.C. § 245(d) and replacing the "on the bond" provision with the "with respect to the bond" provision. Grain Standards and Warehouse Improvement Act of 2000 § 201.

Syngenta asserts Congress replacing "on the bond" with "with respect to the bond" broadened the scope of possible suits authorized by 7 U.S.C. § 245(d). Syngenta argues this broadening allows any person injured by a warehouse operator's breach of a bonded USWA obligation to sue the warehouse operator for damages resulting from the breach. We disagree. As an initial matter, Syngenta's proposed interpretation of the statute would render the phrase "with respect to the bond or other financial assurance" superfluous. "We 'avoid interpreting a statute in a manner that renders any section of the statute superfluous or fails to give effect to all of the words used by Congress.'" Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 609 (8th Cir. 2011) (quoting Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 824 (8th Cir. 2010)).

License bonds, like the one Bunge submitted pursuant to the USWA here, "permit payment to the obligee for the loss or damage resulting from . . . violations by the licensee of the duties and obligations imposed on [it]." Black's Law Dictionary 180 (6th ed. 1990). In addition, "[license] bonds . . . in most cases, provide that private persons harmed by the lack of faithful performance by the licensee have an action *against the secondary obligor*[1] on the bond." Restatement (Third) of Suretyship & Guaranty § 71 cmt. f (1996) (emphasis added). We find nothing in the text or legislative history of 7 U.S.C. § 245(d) to indicate Congress, in amending the USWA, intended to authorize injured third parties to sue a breaching warehouse operator directly rather than the surety. Accordingly, 7 U.S.C. § 245(d) does not authorize Syngenta to sue Bunge for the alleged violation of 7 U.S.C. § 247(a).

2.      Implied private cause of action in 7 U.S.C. § 247(a).

Syngenta's next contends the text of 7 U.S.C. § 247(a) alone authorizes its USWA claim. The text of section 247(a) is silent with respect to any private cause of action. Syngenta, however, argues the statute implicitly authorizes a private cause of action. Whether a statute implicitly authorizes a private cause of action is a question of statutory construction, which we review de novo. Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).

"[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (citing Touche Ross, 442 U.S. at 578). Our "task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id.

---

[1]The Restatement uses the term "secondary obligor" in place of the term "surety." Restatement (Third) of Suretyship & Guaranty § 1 cmt d.

(citing Transamerica Mort. Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979)). "Statutory intent . . . is determinative." Id. (citations omitted).

We begin our analysis with the text of the statute. See id. at 288. The text of 7 U.S.C. § 247(a) focuses on the warehouse operator, the regulated entity. In Sandoval, the Supreme Court noted "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" Id. (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)).

We also look to the statutory structure. See id. As already discussed, Congress expressly included a private cause of action for violations of bonded USWA obligations in 7 U.S.C. § 245(d), albeit not the one Syngenta has attempted to bring. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id. at 290 (citations omitted). Syngenta nonetheless argues the statutory structure weighs in favor of finding an implied cause of action here, pointing to 7 U.S.C. § 255. Section 255, however, is merely a jurisdictional statute. Merely jurisdictional statutes do not create private causes of action. DeVilbiss v. Small Bus. Admin., 661 F.2d 716, 718 (8th Cir. 1981).

Finding no indication in either the text of 7 U.S.C. § 247 or the structure of the USWA that Congress intended to imply a private cause of action in 7 U.S.C. § 247, we need not look further. See Sandoval, 532 U.S. at 288-91 (ending the inquiry of whether Title VI provided a private cause of action after finding no evidence of congressional intent to do so in the text or structure of the statute). The text of section 247(a) does not implicitly authorize a private cause of action for violations of a warehouse operator's fair treatment obligation.

B.      Third-Party Beneficiary Claim

Syngenta also contends the district court erred by dismissing the claim Syngenta alleged as a third-party beneficiary of the License Agreement, arguing it qualifies as a third-party beneficiary to the agreement. "A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend." Astra USA, Inc. v. Santa Clara Cnty., Cal., 131 S. Ct. 1342, 1347 (2011).

Syngenta points to section M of the License Agreement, arguing it is evidence the federal government and Bunge intended any person injured by a breach of an obligation under the License Agreement be entitled to sue on the agreement. We disagree. In pertinent part, section M sets forth "[a] person may initiate legal action in any [federal] court . . . concerning a claim of noncompliance . . . with respect to activities authorized under the USWA." In our view, section M is similar to a jurisdictional statute in that it merely establishes a venue for litigating claims based on the License Agreement. We find no indication in the License Agreement of an intent to benefit a seed producer like Syngenta. Accordingly, we conclude Syngenta is not a third-party beneficiary of the License Agreement and the district court did not err in dismissing Syngenta's third-party beneficiary claim on the pleadings.

III

Syngenta also contends the district court erred in granting Bunge summary judgment on its claim of false advertising under the Lanham Act. We review a district court's grant of summary judgment de novo. Iowa Right To Life Comm., Inc. v. Tooker, 717 F.3d 576, 583 (8th Cir. 2013), cert. denied, 134 S. Ct. 1787 (2014).

Until recently, there was a circuit split regarding the approach to analyzing standing to bring a claim under the Lanham Act. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1385 (2014) (describing the split). Prior

decisions of this court had held that, for a false statement to be actionable under the Lanham Act, it must be commercial speech which, among other things, required it to be made by the plaintiff's competitor. See Aviation Charter, Inc. v. Aviation Research Grp./US, 416 F.3d 864, 871 (8th Cir. 2005). The district court reviewed Syngenta's claim under the then-controlling standard and granted Bunge summary judgment, reasoning (1) Syngenta did not have standing to bring the claim because it was not Bunge's competitor; and (2) Bunge's signs had not constituted commercial speech.

While this matter was under advisement, the Supreme Court issued its decision in Lexmark. In Lexmark, the Supreme Court resolved the circuit split, establishing the zone-of-interests test and proximate causality requirement as the proper analysis for analyzing standing to allege a claim under the Lanham Act. Lexmark, 1345 S. Ct. at 1391. The Supreme Court also expressly rejected the requirement that challenged commercial speech be made by a competitor. See id. at 1392 ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect only the false-advertiser's direct competitors.").

As it analyzed Syngenta's standing under this circuit's now-abrogated standard, the district court has not yet ruled on whether Syngenta has standing under the zone-of-interests test and proximate causality requirement. Bunge contends we may nevertheless affirm the grant of summary judgment under the district court's alternate ruling that Bunge's challenged statements did not qualify as commercial speech, a ruling Syngenta disputes. Looking past the threshold standing determination to affirm on the basis of the merits of a contested point of law, however, would be assuming "hypothetical jurisdiction." We have previously rejected this approach. Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1119 (8th Cir. 2011) ("[A] court may not assume hypothetical jurisdiction to decide contested questions of law when its jurisdiction is in doubt." (internal quotation marks and citation omitted)). Accordingly, we find it necessary to remand Syngenta's Lanham Act claim

for the district court to determine in the first instance whether Syngenta has standing to bring the claim under the zone-of-interests test and proximate causality requirement.

IV

For the foregoing reasons, we affirm the judgment of the district court dismissing Syngenta's USWA and third-party beneficiary claims on the pleadings. The grant of summary judgment to Bunge on Syngenta's Lanham Act claim is vacated and the claim is remanded for further proceedings consistent with this opinion.

_____