**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOUGLAS L. KIMZEY, pro se,
*Plaintiff-Appellant/*
*Cross-Appellee*,

v.

YELP! INC.,
*Defendant-Appellee/*
*Cross-Appellant.*

Nos. 14-35487
14-35494

D.C. No.
2:13-cv-01734-RAJ

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Submitted September 2, 2016[*]
Seattle, Washington

Filed September 12, 2016

Before: Michael Daly Hawkins, M. Margaret McKeown,
and Andre M. Davis,[**] Circuit Judges.

Opinion by Judge McKeown

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Andre M. Davis, Senior Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY[***]

### Communications Decency Act

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of Douglas Kimzey's action alleging that Yelp! Inc. was liable for two negative business reviews posted on Yelp's website.

Section 230 of the Communications Decency Act "immunizes providers of interactive computer services against liability arising from content created by third parties." Kimzey alleged that Yelp was responsible for creating and developing content, and therefore did not enjoy immunity under the Communications Decency Act which only grants immunity if the computer service provider was also not an "information content provider."

The panel held that Yelp fell under the Communications Decency Act's grant of immunity, and rejected Kimzey's claims to the contrary. The panel held that there were no facts plausibly suggesting that Yelp fabricated content under a third party's identity. The panel also rejected Kimzey's theory that Yelp transformed a third party review into its own "advertisement" or "promotion." The panel concluded that the proliferation and dissemination of content did not equal creation or development of content.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Douglas L. Kimzey, Bellevue, Washington, pro se Plaintiff-Appellant/Cross-Appellee.

Venkat Balasubramani, Focal PLLC, Seattle, Washington; Aaron Schur, Yelp Inc., San Francisco, California; for Defendant-Appellee/Cross-Appellant.

**OPINION**

McKEOWN, Circuit Judge:

Section 230 of the Communications Decency Act ("CDA") "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (footnote omitted) (citing 47 U.S.C. § 230(c)). This case pushes the envelope of creative pleading in an effort to work around § 230.

The complaint centers on two negative business reviews posted on Yelp's website[1] about Douglas Kimzey's locksmith business. Instead of asserting that Yelp was liable in its well-known capacity as the passive host of a forum for user reviews—a claim without any hope under our precedents,

---

[1] We have previously noted that Yelp "provides an online directory that allows registered users to post reviews and rank businesses on a scale of one to five stars" and, "[b]ased on these user rankings, . . . assigns businesses an overall 'star' rating." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014).

such as *Roommates.Com*—Kimzey cryptically alleged that Yelp in effect created and developed content. Kimzey claims that Yelp is responsible for causing a review from another site to appear on its page, providing a star-rating function that transforms user reviews into Yelp's own content, and "caus[ing] [the statements] to appear" as a promotion on Google's search engine. This phrasing seeks to take advantage of the fact that the CDA's "grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Id.* at 1162 (quoting 47 U.S.C. § 230(f)(3)); *see also FTC v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009) ("The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others.").

Kimzey apparently hoped to plead around the CDA to advance the same basic argument that the statute plainly bars: that Yelp published user-generated speech that was harmful to Kimzey. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009) (holding that Yahoo! was immune from liability for negligently declining to remove indecent third-party content). We decline to open the door to such artful skirting of the CDA's safe harbor provision. This case is in some sense a simple matter of a complaint that failed to allege facts sufficient to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But it is also more consequential than that, given congressional recognition that the Internet serves as a "forum for a true diversity of . . . myriad avenues for intellectual activity" and "ha[s] flourished . . . with a minimum of government

regulation." 47 U.S.C. § 230(a)(3)–(4). Kimzey's effort to circumvent the CDA's protections through "creative" pleading fails, and the district court did not err in granting Yelp's motion to dismiss.

## BACKGROUND

Yelp describes its websites and mobile applications as "provid[ing] a forum for members of the public—free of charge—to read and write reviews about local businesses, government services, and other entities." Kimzey owns a locksmith business, Redmond Locksmith (aka "Redmond Mobile Locksmith"), that operates in the greater Seattle metropolitan area.

In September 2011, a Yelp user identified as "Sarah K" posted a review of Kimzey's business on the Yelp page for Redmond Mobile Locksmith:

> THIS WAS BY FAR THE WORST EXPERIENCE I HAVE EVER ENCOUNTERED WITH A LOCKSMITH. DO NOT GO THROUGH THIS COMPANY. I had just flew [sic] back from a long business trip with absolutely no sleep, had to drive into work right after getting off the plane. I was so tired that I locked my keys in the car. So when I realized what happened I called Redmond Mobile. The gentlemen [sic] on the phone told me that a technician would be out ASAP and quoted me $50 for the service, which seemed reasonable. $35 for the service call and $15 for the lock. The technician called and said he'd be at my office in 30 min,

an hour goes by and nothing. Call the company back to ask about the ETA and was greeted rudely by the person I had spoken to earlier. He took no responsibility. After the technician finally showed up, he was trying to charge me $35 for the service call and $175 for the lock. I got 20% off after trying to argue with him about being late and the incorrect quote. Supposedly, the lock is $15 and up. Bullshit. CALL THIS BUSINESS AT YOUR OWN RISK. I didn't even need new keys. I just needed my car unlocked.

Sarah K gave Redmond Mobile Locksmith a rating of one out of five stars. Approximately one year later, in early September 2012, a person identified as "D K. Of Redmond Mobile Locksmith" posted a comment under Sarah K's review, stating, "Yelp has Posted a Fraudulent review on our Business." The comment included a hyperlink to essentially the same "review posted about a fraud operation known as 'Redmond Mobile' (425) 318-4257," which was not Kimzey's business name. Then Sarah K returned. She posted an update to her review:

I was just informed recently by a friend that this business has been trying to contact others on my friends list asking about my original review. A year ago, I had also received similar msgs from this business and also yelp requesting authentication of the review and the business directly asking me to take down the review because I must have gotten the company incorrect. So let me clarify, I do not work for a competitor of this business nor do

> I appreciate this type of harassment. I've already confirmed to Yelp that indeed this review was meant for Redmond Mobile Locksmith and I have the receipt to prove it. I will be issuing an official complaint to Yelp about this now.

Yelp's administrative records showed that Sarah K was not associated with any internet protocol address associated with Yelp, nor was she ever employed by Yelp.

Kimzey filed a pro se complaint in the district court alleging that Yelp is liable for the reviews by Sarah K under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020; and Washington's libel law. Specifically, the complaint alleged that Yelp "caused to appear a Libelous Per Se statement . . . on . . . Google." By "caused to appear," Kimzey seems to assert that Yelp found the review on another website and posted it as a comment on its own website. Kimzey asserted that Yelp went on to publish the statements by Sarah K as "advertisements" or as a "promotion" on Google as part of a "Traffic Acquisition" program. After clicking on the "promotion," a Google user would be "directed to Yelp.com and then shown Yelp sponsored [sic] advertising." At the center of this allegedly creative process was a star rating, which Kimzey alleged "Yelp has developed and created" by "design[ing] the star image and creat[ing] the color."

Kimzey also alleged that the content of at least the first review posted by Sarah K bore the indicia of an "illegal scheme . . . operated by the EL-AD Group, which uses thousands of fictitious locksmith business names on the

Internet in every major US city, to promote themselves." The connection between Yelp and this claimed scheme was not clearly articulated in the complaint: Kimzey alleged that EL-AD's purported statement "transitioned to Yelp.com and was linked to the Plaintiffs [sic] business name" where it then "transitioned to Google.com as a Yelp promotion."

Yelp moved to strike the complaint under Washington's anti-SLAPP statute, Wash. Rev. Code § 4.24.525, and to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss, finding that § 230 of the CDA "immunizes [Yelp] from the entirety of [Kimzey]'s lawsuit" and that Kimzey "has not alleged non-conclusory factual content that is plausibly suggestive of a claim entitling him to relief." The district court declined to rule on the anti-SLAPP motion.[2]

## ANALYSIS

Section 230(c)(1) of the CDA "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided

---

[2] In the cross-appeal, Yelp argued that the district court erred by failing to rule on Yelp's motion to strike under the Washington anti-SLAPP statute. Yelp argued that "[t]reating an anti-SLAPP motion as moot based on a Rule 12(b)(6) dismissal frustrates [the] purpose [of the anti-SLAPP statute], and treats the anti-SLAPP statute as a procedural rule, rather than one creating substantive rights and defenses." The issue on cross-appeal is moot in light of the Washington Supreme Court's invalidation of the Washington anti-SLAPP statute, which occurred after the district court's dismissal and after the briefs on appeal were filed. *See Davis v. Cox*, 351 P.3d 862 (Wash. 2015) (en banc).

by another information content provider." *Barnes*, 570 F.3d at 1100–01 (footnotes omitted). Yelp is plainly a provider of an "interactive computer service," *see* 47 U.S.C. § 230(f)(2), a term that we interpret "expansive[ly]" under the CDA, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). As we observed in *Roommates.Com*, "[t]oday, the most common interactive computer services are websites." 521 F.3d at 1162 n.6. There is likewise no question that Kimzey's claims are premised on Yelp's publication of Sarah K's statements and star rating.[3] In other words, the claim is directed against Yelp in its capacity as a publisher or speaker. *See Barnes*, 570 F.3d at 1102. The remaining question is therefore whether the information was "provided by another information content provider." *Id.* at 1101.

Although the complaint is far from lucid and the opening brief cryptic to the point of opacity, we discern two discrete theories of Yelp's alleged authorship. The first, and the simplest, theory is that Yelp created the review, possibly by copying a review previously posted on another website. This echoes the complaint in our recent opinion in *Levitt*. 765 F.3d 1123. There, a group of business owners alleged that "Yelp created negative reviews of their businesses and manipulated review and ratings content to induce them to purchase advertising through Yelp." *Id.* at 1127.

---

[3] Kimzey's claims under RICO and the Washington Consumer Protection Act, which mirror his defamation/publication claim, fall because he failed to allege key elements, such as "racketeering activity" and a "pattern of racketeering activity" under RICO, *see* 18 U.S.C. §§ 1961, 1962(a)–(c), or the capacity to "deceive a substantial portion of the public" under the Consumer Protection Act, *see Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) (en banc).

We did not reach the CDA issue in *Levitt*, but we explained that for a plaintiff to "make a plausible claim that Yelp authored [a review], it must plead facts tending to demonstrate that the . . . review was not, as is usual, authored by a user." *Id.* at 1135. A careful reading of the complaint reveals that Kimzey never specifically alleged that Yelp authored or created the *content* of the statements posted under the aegis of Sarah K, but rather that Yelp adopted them from another website and transformed them into its own stylized promotions on Yelp and Google. We have no trouble in this case concluding that threadbare allegations of fabrication of statements are implausible on their face and are insufficient to avoid immunity under the CDA. *See Iqbal*, 556 U.S. at 678 (holding that a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Were it otherwise, CDA immunity could be avoided simply by reciting a common line that user-generated statements are not what they say they are.

It cannot be the case that the CDA and its purpose of promoting the "free exchange of information and ideas over the Internet" could be so casually eviscerated. *See Carafano*, 339 F.3d at 1122. This is not to say that CDA immunity extends to content created or developed by an interactive computer service; it does not. *See Roommates.Com*, 521 F.3d at 1162–63. But the immunity in the CDA is broad enough to require plaintiffs alleging such a theory to state the facts plausibly suggesting the defendant fabricated content under a third party's identity. *See Carafano*, 339 F.3d at 1123. Here there are no such facts.

The second, and more convoluted, theory is that Yelp transformed the review by Sarah K into its own

"advertisement" or "promotion" on Google and featured a unique star-rating system as the mantlepiece of its creation. As this case illustrates, it is not difficult to allege in a complaint that a publisher of information engaged in creation by transformation. Here, for instance, Kimzey alleged that Yelp designed and created its signature star-rating system, and thereby served as "author" of the one-star rating given by Sarah K. Kimzey also alleged that Yelp "republishe[d]" the statements on Google as "newly developed advertisements," and in that fashion became the actual author of that iteration of the content. These characterizations have superficial appeal, but they extend the concept of an "information content provider" too far and would render the CDA's immunity provisions meaningless.

The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). The meanings of the words "creation" and "development" are hardly self evident in the online world, and our cases have struggled with determining their scope. *See, e.g.*, *Roommates.Com*, 521 F.3d at 1171 (clarifying the language used in *Carafano* because it was "unduly broad" and recognizing that a website could be a developer of content where it encouraged users to provide illegal content); *Carafano*, 339 F.3d at 1124 (holding that a dating site could not "be considered an 'information content provider' under the [CDA] because no profile has any content until a user actively creates it"); *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (concluding that "development of information" requires "something more substantial than merely editing portions of an e-mail and selecting material for publication"). These cases establish that a website may lose

immunity under the CDA by making a material contribution to the creation or development of content.[4]

It is clear here, however, that neither of the allegedly creative actions taken by Yelp falls within our interpretation of the terms "creation" or "development" of information. Even were we convinced that a one-star rating could be understood as defamatory—a premise we do not embrace, *see Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 870–72 (8th Cir. 2005) (finding ratings inactionable opinion statements), *abrogated on other grounds by Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58 (8th Cir. 2014)—the rating system does "absolutely nothing to enhance the defamatory sting of the message" beyond the words offered by the user. *Roommates.Com*, 521 F.3d at 1172.

Our foundation is *Carafano*, where we held that the mere fact that an interactive computer service "classifies user characteristics . . . and collects responses to . . . questions . . . does not transform [it] into a developer of the underlying misinformation." 339 F.3d at 1124 (internal quotation marks

---

[4] Our sister circuits have generally adopted *Roommates.Com*'s "material contribution" to activity test and have consistently drawn the line at the "crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 413–14 (6th Cir. 2014); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257–58 (4th Cir. 2009) (distinguishing *Roommates.Com* on the basis that the content that the website solicited from users was not itself unlawful); *Accusearch*, 570 F.3d at 1197–201 (denying immunity where a website intentionally made illegal purchases of confidential consumer information).

omitted). *Carafano* cited *Gentry v. eBay, Inc.*, a case from the California Court of Appeal, in which the court examined the eBay rating system that displayed user feedback through both a star symbol and a color code. *See* 339 F.3d at 1124 (citing 121 Cal. Rptr. 2d 703 (Cal. Ct. App. 2002)). Apropos of Yelp's star rating, the eBay rating system was "simply a representation of the amount of such positive information received by other users of eBay's web site" and was thus protected by § 230. *Gentry*, 121 Cal. Rptr. at 717; *see also Levitt v. Yelp! Inc.*, Nos. C-10-1321 EMC, C-10-2351 EMC, 2011 WL 5079526, *7 (N.D. Cal. Oct. 26, 2011) (applying *Gentry*'s logic to Yelp and concluding that "[s]ince the aggregate rating . . . is likewise based on user-generated data, the Court finds that aspect of *Gentry* persuasive"), *affirmed on other grounds by Levitt*, 765 F.3d 1123.

We fail to see how Yelp's rating system, which is based on rating inputs from third parties and which reduces this information into a single, aggregate metric is anything other than user-generated data. Indeed, the star-rating system is best characterized as the kind of "neutral tool[]" operating on "voluntary inputs" that we determined did not amount to content development or creation in *Roommates.Com*. 521 F.3d at 1172; *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (holding that a "website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online").

Nor do Kimzey's arguments that Yelp can be held liable for "republishing" the same content as advertisements or

promotions on Google survive close scrutiny.**[5]** To the extent Kimzey's complaint aims at alleged downstream distribution of the starred review, § 230's immunity defeats the claim. Nothing in the text of the CDA indicates that immunity turns on how many times an interactive computer service publishes "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Just as Yelp is immune from liability under the CDA for posting user-generated content on its own website, Yelp is not liable for disseminating the same content in essentially the same format to a search engine, as this action does not change the origin of the third-party content. *See Ascentive, LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011) ("[Search engine optimization and] use of plaintiffs' marks to make [defendant's ] pages appear higher in search engine results list . . . do not render [defendant] an information content provider."). Simply put, proliferation and dissemination of content does not equal creation or development of content.

**AFFIRMED.**

---

**[5]** It is unclear whether the republication on Google that Kimzey alleges amounts to anything more than the passive indexing of Yelp reviews *by* Google for the purpose of populating its search engine results. If this is what Kimzey means, then the claims fail because he pled no plausible theory of liability for Yelp stemming from Google's actions. Tipping to Kimzey's favor in construing his claim, we assume that Kimzey alleges Yelp proactively posted advertisements or promotional links on Google.