# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOAN DOE, as Guardian *ad litem* for )
JANE DOE, a minor, )
                               Plaintiff, )
                                          )
          v. )      C.A. No.: N24C-09-030-PRW
                                          )
SNAP, INC., a/k/a SNAPCHAT, INC., )
VERIZON COMMUNICATIONS, )
INC., APPLE INC., and ANTHONY )
N. OMEIRE )
                    Defendants. )

Submitted: July 31, 2025
Decided: October 15, 2025

*Upon Defendants Snap, Verizon, and Apple's Motions to Dismiss,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Raeann Warner, Esquire, COLLINS PRICE WARNER WOLOSHIN, Wilmington, Delaware; Lee W. Davis, Esquire (*argued*), LAW OFFICES OF LEE W. DAVIS, ESQUIRE, LLC, Pittsburgh, Pennsylvania, *Attorneys for Plaintiff Jane Doe.*

Aaron M. Nelson, Esquire, and Denis S. Kraft, Esquire, HEYMAN ENERIO GUTTUSO & HIRZEL LLP, Wilmington, Delaware; Leah Godesky, Esquire (*argued*), and Louis W. Fisher, Esquire, O'MELVENY & MEYERS LLP, New York, New York, *Attorneys for Defendant Snap, Inc., a/k/a SnapChat, Inc.*

John Sensing, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Scott A. Elder, Esquire (*argued*), and Jenny A. Hergenrother, Esquire, ALSTON & BIRD LLP, Atlanta, Georgia, *Attorneys for Verizon Communications, Inc.*

Mary F. Dugan, Esquire, and Michael A. Luakaitis, Esquire, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; Wesley Sze, Esquire (*argued*), and Christopher Chorba, Esquire, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, California, *Attorneys for Apple Inc.*

**WALLACE, J.**

Plaintiff, Joan Doe, has asserted a number of claims against various technology companies—Apple Inc., Snap, Inc., and Verizon Communications Inc.—stemming from the sexual assault of her then ten-year-old daughter, Jane, that she alleges was facilitated, in part, by Jane's use of the smart phone Joan gave her. For the reasons that follow, Defendants' motions to dismiss (D.I. 34; D.I. 35; D.I. 36) are **GRANTED**, and the Complaint is dismissed with prejudice without leave to amend.

## I. FACTUAL[1] AND PROCEDURAL BACKGROUND

In June 2021, Joan Doe purchased a new Apple iPhone 12 for her daughter Jane's tenth birthday from Verizon.[2] In connection with that purchase, Ms. Doe also subscribed Jane in a "Kids Unlimited Plan" that included access to Verizon's Smart Family App.[3] That application permitted Ms. Doe to filter and block content she deemed inappropriate for her daughter's use.[4]

After receiving the phone, Jane requested permission through the Smart Family App to download Snapchat, a messaging service that allows communications

---

[1] Unless otherwise noted, the following facts are drawn from the Plaintiff's Complaint (D.I. 1). *See Windsor I, LLC v. CW Capital Asset Mgmt.* LLC, 238 A.3d 863, 873 (Del. 2020) ("In most cases, when the Superior Court considers a 12(b)(6) motion, it limits analysis to the 'universe of facts' within the complaint and any attached documents.").

[2] Compl. ¶ 14.

[3] *Id.* ¶ 16.

[4] *Id.* ¶¶ 18, 20, 23.

to disappear following their viewing.[5]  Ms. Doe approved the request, permitting Jane to download the application through the Apple App Store.[6]  Thereafter, Ms. Doe and Jane became connected on Snapchat as contacts.[7]

About sixth months later, Ms. Doe attended a networking event at a local restaurant, where she encountered Anthony N. Omeire.[8]  During that event, Ms. Doe provided Mr. Omeire with her contact information.[9]  Once shared, Snapchat's contact synchronization function linked Ms. Doe's information with Jane's iPhone, thereby enabling Mr. Omeire to add Jane to his Snapchat contacts.[10]

Mr. Omeire subsequently used Snapchat to contact Jane.[11]  He then—first via impersonation of a teenage girl and later a "friend" of her mother— befriended Jane online and eventually sexually assaulted her when they met in person.[12]  For that crime, Mr. Omeire has been convicted of two counts of first-degree rape[13] and imprisoned for a term of sixty years.[14]

---

[5]  *Id.* ¶¶ 23, 41.

[6]  *Id.* ¶¶ 23-25.

[7]  *Id.* ¶ 25.

[8]  *Id.* ¶ 28.

[9]  *Id.* ¶ 28.

[10]  *Id.* ¶¶ 31-33.

[11]  *Id.* ¶¶ 34-35.

[12]  *Id.* ¶¶ 36-39.

[13]  *Id.* ¶ 39. *See* DEL. CODE ANN. tit. 11, § 773(a)(5) (2022) (defining an adult's sexual intercourse with a child who has not yet reached his or her twelfth birthday as first-degree rape).

[14]  Compl. ¶ 39.

Joan Doe, as Guardian *ad litem* for Jane Doe, filed this action against Snap, Verizon, Apple, and Mr. Omeire.[15] As to the technology company defendants, the Complaint asserts thirteen counts: (1) negligence; (2) failure to warn; (3) design defect; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; (6) breach of the implied warranty of fitness for a particular purpose; (7) negligent performance of services; (8) aiding and abetting; (9) violation of the Delaware Consumer Fraud Act, 6 *Del. C.* §§ 2513 and 2525; (10) violation of the Delaware Deceptive Trade Practices Act, 6 *Del. C.* §§ 2532 and 2533; (11) fraudulent misrepresentation; (12) negligent infliction of emotional distress; and (13) intentional infliction of emotional distress.[16]

Each of the technology companies moved to dismiss all counts of the Complaint targeting them.[17]

## II. PARTIES' CONTENTIONS

The Does contend that Snap, Verizon, and Apple each played a critical role in facilitating the harm suffered by Jane for which they can be held liable under the

---

[15] *See generally id.*

[16] *Id.* ¶¶ 133-461.

[17] *See generally* Opening Brief in Support of Defendant Apple Inc.'s Motion to Dismiss (D.I. 36) [hereinafter Apple's Motion to Dismiss]; Defendant Snap Inc.'s Opening Brief in Support of Their Motion to Dismiss Complaint (D.I. 34) [hereinafter Snap's Motion to Dismiss]; Defendant Verizon Communications Inc.'s Opening Brief in Support of Motion to Dismiss Plaintiff's Complaint (D.I. 35) [hereinafter Verizon's Motion to Dismiss].

theories penned in the Complaint.[18]  Among other allegations, Ms. Doe posits that Apple distributed Snapchat through its App Store without adequate safeguards;[19] that Snap's platform design created the conditions that allowed Mr. Omeire to contact Jane;[20] and that Verizon marketed its Smart Family App as a safety feature but failed to ensure it worked as promised.[21]  Ms. Doe maintains that these acts and omissions sound in negligence, consumer fraud, and related theories of liability.[22]

## A. APPLE CLAIMS LACK OF PERSONAL JURISDICTION.

Apple, alone, asserts that this Court lacks personal jurisdiction over it because Apple is incorporated in California and has its principal place of business there.[23] Apple maintains that its national distribution of products and services does not constitute the type of purposeful activity in Delaware necessary to support jurisdiction.[24]

---

[18]   *See generally* Compl.

[19]   *See* Jane Doe's Answering Brief to Apple Inc.'s Opening Brief in Support of Their Motion to Dismiss Complaint (D.I. 47) [hereinafter Pl.'s Answer to Apple].

[20]   *See* Plaintiff's Answering Brief to Defendant Snap Inc.'s Opening Brief in Support of Their Motion to Dismiss Complaint (D.I. 45) [hereinafter Pl.'s Answer to Snap].

[21]   *See* Plaintiff's Answering Brief in Response to Defendant Verizon Communications Inc.'s Opening Brief in Support of Motion to Dismiss Plaintiff's Complaint (D.I. 46) [hereinafter Pl.'s Answer to Verizon].

[22]   *See generally* Compl.; Pl.'s Answer to Verizon; Pl.'s Answer to Apple; Pl.'s Answer to Snap.

[23]   *See* Apple's Motion to Dismiss, at 4-9.

[24]   *See id.*

**B. SEEKING DISMISSAL OF ALL CLAIMS BROUGHT AGAINST THEM, ALL MOVING DEFENDANTS INVOKE THE COMMUNICATIONS DECENCY ACT.**

While the Moving Defendants advance arguments that are at times similar and at other times distinct, ultimately they all rely in large part on the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230 as their shared shield against liability.[25] They maintain that each qualifies as a provider of an "interactive computer service," that Plaintiff's claims impermissibly seek to treat them as publishers of third-party content, and that the content at issue was created entirely by Mr. Omeire, not by them.[26] Accordingly, they contend that Section 230 affords complete immunity.[27]

## III. STANDARD OF REVIEW

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[28] In resolving a Rule 12(b)(6) motion, the Court: (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and

---

[25] *See generally* Apple's Motion to Dismiss; Snap's Motion to Dismiss; Verizon's Motion to Dismiss.

[26] Apple's Motion to Dismiss, at 30-34; Snap's Motion to Dismiss, at 6-13; Verizon's Motion to Dismiss, at 9-18.

[27] Apple's Motion to Dismiss, at 30-34; Snap's Motion to Dismiss, at 6-13; Verizon's Motion to Dismiss, at 9-18.

[28] Super. Ct. Civ. R. 12(b)(6).

(4) denies dismissal if recovery on the claim is reasonably conceivable.[29] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[30] Nor must the Court adopt "every strained interpretation of the allegations the plaintiff proposes."[31] Still, even with those cautions in mind, Delaware's pleading standard is "minimal."[32]

## IV. DISCUSSION

The Court considers three issues presented by Defendants' motions. First, the Court addresses whether Apple should be dismissed for lack of personal jurisdiction under Rule 12(b)(2). Second, the Court examines whether Plaintiff's claims are barred under Section 230 of the CDA. Finally, the Court considers whether Plaintiff should be granted leave to amend her Complaint.

For the reasons that follow, Apple's motion to dismiss for lack of personal jurisdiction is **DENIED**. Defendants Snap, Verizon, and Apple's motions to dismiss based on Section 230 immunity are **GRANTED**. Plaintiff's request for leave to amend the Complaint is **DENIED**.

---

[29] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[30] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[31] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[32] *Cent. Mortg. Co.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

**A. THE COURT CANNOT SAY AT THIS STAGE THAT IT LACKS PERSONAL JURISDICTION OVER APPLE.**

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing a proper basis for the Court's exercise of jurisdiction over the nonresident defendant.[33] At this point, a plaintiff need only make a *prima facie* showing that jurisdiction exists, and all factual disputes and reasonable inferences thereon are resolved in the plaintiff's favor.[34]

At the motion to dismiss stage, the Court's review is limited. The parties here dispute whether Ms. Doe's claims arise from Apple's distribution of the iPhone into Delaware or, instead, from the general availability of third-party applications on the App Store.[35] If the claims arise from the iPhone itself, it's reasonably conceivable that Apple's distribution agreement with Verizon—through which iPhones are sold to Delaware consumers—constitutes purposeful availment under Delaware's long-arm statute and the stream of commerce theory.[36] That said, Apple may ultimately

---

[33] *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. Ct. 1996).

[34] *Id.*

[35] *Compare* Apple's Motion to Dismiss, at 30-34 ("[T]he only suit-related conduct at issue is Apple's routine publication of third-party apps on the App Store that are available across the country, and its general marketing statements. There are no allegations that Apple specifically targeted these acts toward Delaware.") *with* Pl.'s Answer to Apple, at 7 ("Apple designed and contracted for the manufacture . . . and distribu[tion of] Jane's iPhone 12.").

[36] *See Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157-60 (Del. Super. Ct. 1997) (describing the analysis, this Court stated that it needs "to determine whether there is an intent or purpose on the part of the manufacturer to serve the Delaware market with its product.").

prevail in demonstrating that the claims do not "arise from" the iPhone but instead from applications available on the App Store which, standing alone, just might not suffice for jurisdiction.[37]

Both arguments require resolution of a dispute as to the factual nature of Plaintiff's claims—a dispute this Court can't resolve against the Plaintiff at this juncture. Accordingly, under the forgiving standard applicable at the motion to dismiss stage, the Court concludes that Apple cannot be dismissed at this time for lack of personal jurisdiction. Therefore, Apple's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### B. PLAINTIFF'S CLAIMS AGAINST SNAP, VERIZON, AND APPLE ARE BARRED BECAUSE SECTION 230 OF THE CDA IMMUNIZES THOSE DEFENDANTS.

Snap, Verizon, and Apple say that Ms. Doe's claims must be dismissed, arguing that CDA Section 230(c)(1) immunizes them from liability from the Delaware state-law claims that Ms. Doe brings.[38] In effect, the companies contend that Congress has afforded service providers immunity from state tort law, and that such immunity is dispositive here.[39]

---

[37] *See Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *5-6 (Del. Super. Ct. Sept. 30, 2016) (citing *Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 279 (D. Del. 2007)) (requiring "'something more' from the defendant than 'the knowledge that their website could be viewed or that their product could be used in a forum state.'").

[38] Apple's Motion to Dismiss, at 30-34; Snap's Motion to Dismiss, at 6-13; Verizon's Motion to Dismiss, at 9-18.

[39] Apple's Motion to Dismiss, at 30-31; Snap's Motion to Dismiss, at 6-8; Verizon's Motion to Dismiss, at 9-10.

The CDA itself makes clear that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[40]  And this Court has recognized that "Section 230 grants 'immunity from suit rather than a mere defense to liability.'"[41]  The immunity, however, is not boundless.  The CDA does not displace "any State law that is *consistent* with [it]."[42]

The question before the Court, then, is whether the Defendants fall within the protection of the CDA.  That inquiry requires two showings:  (1) that Snap, Verizon, and Apple satisfy the CDA's definitional requirements, and (2) that Delaware law, as attempted to be applied here, is inconsistent with the federal provision and thus preempted.

### 1.  Snap, Verizon, and Apple are Protected Under the CDA.

Section 230 of the CDA provides broad immunity to interactive computer service providers.[43]  Both the Third Circuit and this Court have engaged a three-part

---

[40]  47 U.S.C. § 230(c)(1) (2025); *see generally Anderson v. TikTok, Inc.*, 116 F.4th 180, 183 (3d Cir. 2024) (citing 47 U.S.C. § 230(c)(1)).

[41]  *Page v. Oath Inc.*, 2021 WL 528472, at *6 (Del. Super. Ct. Feb. 11, 2021) (citing *Nemet Chevrolet, Ltd. v. ConsumerAffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009)), *aff'd*, 270 A.3d 833 (Del. 2022); *see also Moretti v. Hertz Corp.*, 2017 WL 1032783, at *2 (D. Del. Mar. 17, 2017) ("[C]ourts have interpreted [Section 230] as providing broad immunity" where claims relate to "dissemination of information originating from a third party").

[42]  47 U.S.C. § 230(e)(3) (emphasis added).

[43]  The First Circuit has stated, "[t]here has been near-universal agreement that section 230 should not be construed grudgingly." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir.2007); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316,

test for determining whether a defendant is immune under Section 230.[44]  To establish immunity, a defendant must show:  (1) it provides an "interactive computer service"; (2) the plaintiff's claim treats it as the publisher or speaker of information; and (3) the information at issue was created by a third party—"information provided by another information content provider."[45]  If these three elements are met, then the CDA immunizes the Defendants from Delaware liability, unless the statute itself carves out an exception.[46]

The first step is straightforward.  The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."[47]

Courts give that definition a liberal read.[48]  And Ms. Doe does not adequately dispute that Snap, Verizon, and Apple fall within it.[49]  On this point, then, there is

---

1321-22 (11th Cir. 2006); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)).

[44]  *Metroka v. Pennsylvania State L. Enf't*, 2024 WL 4164272, at *2 (3d Cir. Sept. 12, 2024); *Page*, 2021 WL 528472, at *6; *see also Moretti*, 2017 WL 1032783, at *2.

[45]  *Metroka*, 2024 WL 4164272, at *2 (citing *Kabbaj v. Google, Inc.*, 2014 WL 1269864, at *2 (D. Del. Apr. 7, 2014) (quoting 47 U.S.C. § 230 (c)(1))).

[46]  *Id.*; *see generally* 47 U.S.C. § 230(c), (e).

[47]  47 U.S.C. § 230(f)(2).

[48]  *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1052 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148 (9th Cir. 2025) (citing *Dryoff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019)).

[49]  Pl.'s Answer to Apple, at 31-34; Pl.'s Answer to Snap, at 5-9; Pl.'s Answer to Verizon, at 8 ("Only one element of three required to bar Jane's suit is satisfied under the CDA . . ."). Previously, courts have found Reddit, Grindr, Snapchat, and the Apple App Store fit within the definition.  *See*

no genuine dispute. The Court concludes that the Defendants qualify as providers of an interactive computer service under Section 230 and proceeds to the remaining inquiries: whether the claims in this case seek to treat the Defendants as speakers or publishers, and whether the information at issue originated with another content provider other than Snap, Verizon, and Apple, individually.

### a. Plaintiff Doe Seeks to Treat Snap, Verizon, and Apple as Speakers or Publishers.

The second consideration in determining Section 230 immunity asks whether the plaintiff's claims necessarily treat the defendants as *publishers* or *speakers* of third-party content.[50] Again, courts have read this requirement broadly, in keeping with Congress's design to afford sweeping protection to interactive computer services for content they did not create themselves.[51]

Yet, this prong is sometimes easily muddled or confused: the determination is not whether the defendants did in fact publish or speak, but rather if the plaintiff's claims in effect allege that they did. Courts have consistently looked beyond the

---

*generally Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025) (observing that there was no dispute that Grindr is an interactive computer service provider); *L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1095 (S.D. Cal. 2023) (noting that plaintiff did not dispute that Snap is an interactive computer service provider and "[c]ourts have noted that providers of interactive computer services include entities that create, own, and operate applications that enable users to share messages over its internet-based servers, like [Snap, Apple, and Google]"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (explaining that there was no dispute that Apple is an interactive computer service provider).

50  *Page*, 2021 WL 528472, at *6-7.

51  *See generally Doe v. Grindr*, 709 F. Supp. 3d 1047; 47 U.S.C. § 230(c).

plaintiff's chosen labels—whether negligence, product liability, or otherwise—to ask whether the gravamen of the claim truly is the defendant's handling of third-party speech.[52] No doubt, Plaintiff valiantly attempts to cast her claims similarly (but not too similarly) to those others' failed pleadings—saying it is not the content of Mr. Omeire's communications that she seeks to hold Snap, Verizon, and Apple to account for but rather their failures in allowing Mr. Omeire access to Jane.[53] But when, as here, the claim truly turns on decisions about whether the entity was required to monitor, review, and edit content, then a court must recognize that the defendant is being sued as a publisher, regardless of how the pleading is crafted.[54]

And a claim treats the interactive computer service provider as the publisher or speaker when it casts the defendant "in the same position as the [information content provider]."[55] "Courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or

---

[52] *See id.* at 1054-57.

[53] *See generally* Compl.

[54] *See Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) (finding "monitoring, reviewing, and editing" content is publishing activity); *Doe v. Grindr*, 709 F. Supp. 3d at 1052-54 (citing *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)) ("A court must therefore look to 'what the duty at issue actually requires:' i.e., 'whether the duty would necessarily require an internet company to monitor third-party content.'"); *Page*, 2021 WL 528472, at *6-7 (citing *Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *2 n.24 (Del. Super. Ct. June 24, 2020) ("Section 230 'protects websites from liability . . . for material posted on their websites by someone else.' This is true regardless of whether [the defendant] exercised 'traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'"); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098-99 (9th Cir. 2019).

[55] *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997).

speaker."[56] "Artful pleading" will not circumvent the CDA if "allegations are merely another way of claiming [a defendant] was liable" for harms occasioned by "third-party-generated content."[57]

While the Court has reviewed the myriad claims asserted against the Defendants—ranging from negligence and misrepresentation to product defect and intentional infliction of emotional distress—they all ultimately stem from the same factual premise: that Snap, Verizon, and Apple failed to prevent Mr. Omeire from gaining access to Jane Doe, and therefore owed her a duty to block or restrict his communications.[58] However framed, the claims seek to impose liability for the Defendants' alleged failure to "monitor, screen, or regulate" third-party interactions on their platforms or devices.[59] But Section 230 forecloses precisely such theories of liability.

Against Snap, the Complaint identifies duties such as verifying user ages and identities, restricting strangers from connecting with minors, and preventing the creation of multiple accounts.[60] But these are editorial functions—the very activities of publication that Section 230 immunizes. Even allegations about Snap Maps and

---

[56] *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

[57] *Doe v. MySpace*, 528 F.3d at 420.

[58] Compl. ¶¶ 133-461.

[59] *Cf. Fields*, 217 F. Supp. 3d at 1123.

[60] Compl. ¶¶ 135-147.

Bitmojis[61] describe features that allegedly facilitated the transmission or disguise of third-party information. Put another way, such an allegation flows from how Snap disseminated or allowed transmittal of Mr. Omeire's user-generated content.

The same analysis applies to Verizon. Among other allegations that follow a similar thread, Ms. Doe contends that Verizon assumed a "non-delegable duty" through its Smart Family App to "Childproof the Internet."[62] But liability again turns on Verizon's purported failure to block, filter, or restrict Mr. Omeire's communications on Snapchat.

Apple is similarly situated. The Complaint asserts that Apple negligently distributed Snap's and Verizon's applications through its App Store, and that Apple misled users by advertising that all apps are reviewed for safety.[63] But the core theory is that Apple should have excluded Snapchat or Verizon's Smart Family App because they did not adequately screen or block harmful content. Again, that is an allegation about editorial decisions of a publisher or speaker—what third-party applications and communications to host, allow, or restrict.

Nor do the related claims of false misrepresentation, consumer fraud, deceptive trade practices, product defect, intentional infliction of emotional distress,

---

[61] Compl. ¶¶ 111, 147.

[62] Compl. ¶¶ 158-165.

[63] Compl. ¶¶ 169-175.

or state statutes change the analysis. Each theory depends on the same factual premise: That defendants failed to prevent Mr. Omeire's third-party communications with Jane Doe. That kind of claimed liability falls precisely within the scope of Section 230's protection.

### b. The Communications at Issue Were Not Created nor Provided by Snap, Verizon, or Apple.

The last query in the 230 analysis requires the Court to ask whether the information giving rise to Ms. Doe's claims originated from the Defendants themselves or from a third party.[64] Section 230 immunity applies only when the platform is not the "information content provider," a term the statute defines as one who is "responsible, in whole or in part, for the creation or development of" the disputed information.[65] The distinction is crucial. A platform that merely hosts or transmits content is protected; a platform that creates or meaningfully shapes the content is not.[66]

Courts have given substance to this distinction. First, simply offering tools, functions, or design features—such as "friend-suggestions" and datamining

---

64   *Metroka*, 2024 WL 4164272, at *2-3; *Page*, 2021 WL 528472, at *6-7; *see also Moretti*, 2017 WL 1032783, at *2.

65   47 U.S.C. § 230(c)(1); *id.* § 230(f)(3).

66   *Id.* § 230(c)(1); *Compare Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270-71 (9th Cir. 2016) (finding that a website was protected by the CDA when hosting alleged libelous statements on their platform) *with Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1173-74 (9th Cir. 2008) (finding a website was not protected by the CDA when it "encourage[d]" its customers to participate in illegal conduct).

features[67]—does not amount to "creation or development."[68] Allowing users to post messages,[69] share location data,[70] join chatrooms,[71] and create profiles and images[72] involves no contribution to the substance of the content itself. The platform has not authored the speech; it has only provided the stage. Immunity holds in such circumstances. Indeed, Section 230 was enacted to prevent courts from imposing liability on services for failing to screen or block third-party material.[73]

---

[67] *Dyroff*, 934 F.3d at 1098 ("It is true that [the defendant's software] used features and functions, including algorithms, to analyze user posts . . . and recommended other user groups. This includes the heroin-related discussion group to which [plaintiff's son] posted and (through its emails and push notifications) to the drug dealer who sold him the fentanyl-laced heroin. Plaintiff, however, cannot plead around Section 230 immunity by framing these website features as content."); *see generally Doe v. Grindr*, 128 F.4th at 1152 (holding that the app's suggestion of men to date minor, who later raped a child, was not a form of communication by the app).

[68] 47 U.S.C. § 230(f)(3); *Fair Hous. Council of San Fernando Valley*, 521 F.3d at 1169 ("[P]roviding neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception."); *see generally Courtright v. Epic Games, Inc.*, 2025 WL 2319148, at *4-5 (W.D. Mo. Aug. 11, 2025).

[69] *Kimzey*, 836 F.3d at 1270-71 (discussing libelous posts of users).

[70] *Doe v. Grindr*, 709 F. Supp. 3d at 1053-54 (discussing the geolocation feature on software that was used to facilitate the multiple rapes of a young boy, the Court explained: "The harm Doe alleges does not flow solely from the product software. Rather, the harm animating Doe's claims is directly related to the geolocation and content *provided by users*, which facilitates the match, direct messages, in-person meetings, and ultimately here, Doe's assaults.") (emphasis added).

[71] *Doe v. MySpace*, 528 F.3d at 416-21 (citing *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)) (finding that MySpace was free from liability when predators used MySpace chatrooms to communicate with, and later rape, a child).

[72] *See generally Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015); *Doe v. Grindr*, 709 F. Supp. 3d at 1053-54.

[73] The statute itself expressly states Congress's intent was "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." 47 U.S.C. § 230(b). This is why "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also* Niva Elkin-Koren, Giovanni De Gregorio, & Maayan Perel, *Social Media as Contractual Networks: A Bottom Up Check on Content Moderation* 107 Iowa L. Rev. 987, 1014-

The Ninth Circuit's decision in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC* illustrates the other side of the line.[74]  Roommates.com operated a housing website that required all users to disclose protected characteristics such as sex, sexual orientation, and family status before posting or searching for listings.[75]  It then used this information to create profile pages and to filter search results and email notifications so that users were channeled toward or away from listings based on those protected traits.[76]  The federal appeals court held that Roommates.com was not merely hosting third-party content but was itself "responsible, in whole or in part, for the creation or development" of the discriminatory material.[77]  By designing and mandating a system that solicited unlawful preferences and enforced them through search and notification tools, the company "contribute[d] materially to the alleged illegality of the conduct," forfeiting CDA immunity.[78]

Not so here.  Neither Snap, Verizon, nor Apple created tools that required users to enter or act on unlawful information.  There is no allegation they engineered

---

15 (2022) ("Congress passed Section 230 of the CDA . . . primarily to ensure the development of the digital environment . . . . The legal (and political) choice was to introduce a system based on an exemption from liability for computer services which merely host third-party content.").

[74]  521 F.3d 1157 (9th Cir. 2008).

[75]  *Id.* at 1161.

[76]  *Id.* at 1161-62.

[77]  *Id.* at 1162 (citing 47 U.S.C. § 230(f)(3)).

[78]  *Id.* at 1168.

or encouraged Mr. Omeire's harmful content, let alone compelled its creation.

Even the most plaintiff-generous read of Ms. Doe's charges, suggests the platforms here functioned solely as conduits. They provided neutral tools that allowed users to communicate and share information, but they neither authored nor materially shaped the content in dispute. Unlike *Roommates.com*, Defendants Snap, Verizon, and Apple did not "develop" the challenged communications in whole, or even part. Under the Complaint's allegations, the content at issue was created entirely by Mr. Omeire. Ms. Doe's claims rest on the theory that Snap, Verizon, or Apple allowed such material to circulate and make its way to Jane. That theory falls squarely within the editorial and structural functions Congress chose to immunize. The Defendants are not "information content providers" under the CDA.

**2. The CDA Preempts All the Claims Against Snap, Verizon, and Apple.**

Section 230 does not automatically preempt all causes of action involving a technology company; in fact, the statute expressly states that it allows state law that is "consistent" with the CDA.[79] The statute *only* applies where liability is premised on a defendant's role in hosting third-party content.[80] The proper inquiry, therefore, is whether Plaintiff's alleged injuries stem from content created by another user and the Defendants' treatment of that content.

---

[79] 47 U.S.C. § 230(e)(3).

[80] 47 U.S.C. § 230(b); *Page*, 2021 WL 528472, at *6-7.

On close inspection—whether styled as negligence, failure to warn, design defect, warranty breach, fraudulent misrepresentation, emotional distress, or the Delaware statutory claims—the quintessence of each claim that Plaintiff attempts to bring under Delaware law is that Defendants allowed Mr. Omeire's third-party communications to reach Jane and failed to prevent or filter those communications. Courts have consistently held that imposing liability for such conduct treats the service provider as a publisher of user-generated content, a role that Section 230 immunizes.[81]

The attempt here to "plead around" Section 230 by labeling the challenged conduct as product liability, failure to warn, or negligent provision of services must be rejected.[82] The core of each these claims is the same. At bottom, Ms. Doe seeks to hold Defendants Snap, Verizon, and Apple responsible for the consequences of third-party speech and connections. And Section 230 bars such claims.

Accordingly, all claims against Snap, Verizon, and Apple are barred by Section 230 of the CDA and their Motions to Dismiss must be **GRANTED**.

C. **UNDER THE CIRCUMSTANCES HERE, AMENDMENT OF THE COMPLAINT AGAINST SNAP, VERIZON, AND APPLE WOULD BE FUTILE.**

Civil Rule 15 governs how and when parties may amend their pleadings. It provides that leave to amend a complaint "shall be freely given when justice so

---

[81] *See, e.g.*, *Doe v. Grindr Inc.*, 128 F.4th at 1152.

[82] *Dyroff*, 934 F.3d at 1098.

requires."[83] And this Court "freely allows amendment in all but the most limited circumstances."[84] So as a general matter, "[i]n the absence of prejudice to another party, the [Court] is required to exercise its discretion in favor of granting leave to amend."[85]

All that said, while this Court "generally grant[s] motions to amend liberally," it's "not automatic."[86] "A motion to amend may be denied . . . if the amendment would be futile, in the sense that the legal insufficiency of the amendment is obvious on its face."[87]

Plaintiff seeks to amend,[88] but the proposed amendment would not cure the insurmountable deficiencies already identified. Because no such amendment could survive dismissal, granting such leave would be futile. Accordingly, Plaintiff's request for leave to amend is **DENIED**.

---

[83] Del. Super. Ct. Civ. R. 15.

[84] *Ferrari v. Helmsman Mgmt. Servs., LLC*, 2020 WL 3444106, at *7 (Del. Super. Ct. June 23, 2020).

[85] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993) (citing *Ikeda v. Mollock*, 603 A.2d 785, 787-88 (Del. 1991)).

[86] *AluminumSource, LLC v. LLFlex, LLC*, 2021 WL 1997893, at *1 (Del. Super. Ct. May 19, 2021).

[87] *NACCO Indus., Inc. v. Applica Inc.*, 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008); *Clark v. State Farm Mutual Automobile Ins. Co.*, 131 A.3d 806, 811-12 (Del. 2016) ("Although Rule 15 provides that leave to amend a complaint should be 'freely given,' leave to amend should be denied when the proposed amendment would be futile. A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim.") (cleaned up).

[88] Pl.'s Answer to Apple, at 34; Pl.'s Answer to Snap, at 33; Pl.'s Answer to Verizon, at 30.

## V. CONCLUSION

Jane Doe was the innocent child victim of an unspeakable crime. The (no-longer-merely-alleged) perpetrator of those horrific acts has been criminally prosecuted and is, and remains, a defendant in this civil suit. Yet, it is wholly understandable that Ms. Doe would like to take aim at any other person or entity she feels is the least bit responsible for her daughter's harm. Any parent would.

But the execrable use of certain technology that in some circumstances lies along the path to such atrocities—as occurred in so many of the cases cited herein—cannot be remedied by misdirected claims such as Ms. Doe's. When so aimed, they are preempted by federal law. Resultingly, Defendants Snap, Verizon, and Apple's Motions to Dismiss (D.I. 34; D.I. 35; D.I. 36) must be **GRANTED**, and each count of the Complaint dismissed as to each of those entities with prejudice and without leave to amend.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

-22-